UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,

                                  Case No. 1:06-cr-5

v.

                                  HON. GORDON J. QUIST

ANTONIO HADLEY,

       Defendant.

_____/

## OPINION

Defendant Antonio Hadley was indicted for 1) conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); 2) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and 3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Following the close of the government's case-in-chief, Defendant moved pursuant to Fed. R. Crim. P. 29 for a judgment of acquittal on all three counts. While the Court denied Defendant's motion with respect to Count 2, the Court reserved its decision with respect to Counts 1 and 3 because the Court was concerned about whether there was insufficient corroboration of Hadley's confession to sustain his conviction on these counts. After Defendant presented his case, the case was submitted to the jury. The jury returned a guilty verdict on all three counts.

Defendant then renewed his motion for judgment of acquittal with respect to Counts 1 and 3, arguing that his conspiracy conviction (Count 1) could not stand because the government failed to offer sufficient extrinsic evidence corroborating Defendant's alleged admissions and that, since Count 1 is the predicate drug trafficking offense necessary for his conviction on Count 3 –

possession of a firearm in furtherance of a drug trafficking crime – a judgment of acquittal must also be entered on this Count.

For the following reasons, the Court will deny Defendant's motion for a judgment of acquittal.

## I. Facts

Deputy John Hopkins of the Berrien County Sheriff's Department testified that on February 19, 2005, while on patrol, he drove by a residence and saw Antonio Hadley and Hadley's vehicle. Deputy Hopkins knew that Hadley's driver's license was suspended. After observing Hadley and his vehicle, Deputy Hopkins circled the block and came to a stop on another street in a location where he hoped he could observe Hadley driving his vehicle. A short time later, Deputy Hopkins noticed Hadley driving his vehicle approaching the Deputy's marked police cruiser from the rear. When Hadley was about twenty to thirty feet from Hopkin's marked cruiser, Hadley stopped his vehicle, executed a three-point turn, and began traveling away from Deputy Hopkins' vehicle in the opposite direction. Deputy Hopkins drove in a manner to locate and close with Hadley and ended up approaching Hadley's vehicle head-on. As Deputy Hopkins closed the distance with Hadley's car, Hadley parked his vehicle on the wrong side of the street. Deputy Hopkins then observed Hadley and Hadley's passenger, whom Hopkins knew to be Joseph Viera, exit the vehicle and walk briskly toward the front door of a nearby residence. Deputy Hopkins exited his vehicle and called to the men to stop. The men, however, proceeded to the porch of the residence where Hadley began banging on the door and asking to enter the home.

When Deputy Hopkins reached the porch, he told Viera to stand off to his side and to not come up behind him. Hopkins then asked Hadley for his driver's license. Hadley produced a

Michigan ID card but could not produce a valid driver's license. Deputy Hopkins then began to pat-down Hadley's clothes for weapons. While trying to pat-down Hadley's front waist-band, Hadley tried to grab Deputy Hopkins' hand twice. Deputy Hopkins stepped back, removed his taser, and instructed Hadley to stop trying to grab his hand and to submit to a pat-down or risk receiving a discharge from the taser. Hadley then complied with the pat-down. Deputy Hopkins felt two large bulges in Hadley's front pockets that Hopkins believed, from his training and experience, to be U.S. currency. When Deputy Hopkins began to pat-down Hadley's rear pants pockets, Hadley again tried to grab Deputy Hopkins' hand and push it away from his body. Deputy Hopkins warned Hadley that if he tried to grab him again, he would discharge his taser. In patting down the rear waste band of Hadley's pants, Deputy Hopkins felt a firearm in the "small" of Hadley's back. He reached into this area and removed a Glock, model 27, .40 caliber semiautomatic pistol in a black holster. Deputy Hopkins then advised Hadley that he was under arrest and instructed him to walk over to his police cruiser. After placing Hadley in the back seat of his vehicle, Deputy Hopkins looked back for Viera. Viera, however, had fled.

Deputy Hopkins testified that, while patting down Hadley, Hadley told him that he (Hadley) was working undercover with Benton Township Police Officer Eugene Koza to set up some drug dealers and that Deputy Hopkins was "screwing up" what they had going. After placing Hadley in the back seat of his vehicle, Deputy Hopkins handcuffed Hadley. Hopkins then removed the currency from Hadley's front pockets, which amounted to $1,536. Deputy Hopkins then advised Hadley of his *Miranda* rights. Hadley acknowledged that he understood his rights and agreed to talk to Deputy Hopkins. Hadley told Deputy Hopkins again that he was working for Officer Koza to set up some drug dealers. Hadley explained that he had picked up Viera and took him to a nearby

3

residence where he and Viera were fronted nine ounces of powder cocaine.  Hadley said that he was driving Viera to another location where Viera planned to sell the cocaine for $5,600.  Hadley explained that he then planned to drive Viera back to the residence where they received the drugs to deliver the money to the person who fronted them the cocaine.  Deputy Hopkins asked Hadley what he was going to receive for his efforts.  Hadley replied that he had already received his payment, and explained that his payment was the purchase of the Glock firearm for $350, which is well below the firearm's market value.

Michigan State Police Trooper Joel Service arrived at the arrest scene with his drug-detection canine.  Trooper Service used his drug-detection dog to search Hadley's vehicle for the presence of narcotics.  Trooper Service explained that, although the drug detection dog did not "alert," he showed a "strong interest" in the back seat of Hadley's vehicle.  Trooper Service explained that a drug-detection dog alerts when a controlled substance is actually present in a location and shows a "strong interest" when a controlled substance was recently in a location.  In the back seat of Hadley's vehicle, Detective Hopkins found a "clear plastic seal," which, Hopkins explained, is commonly used to package drugs.  The plastic seal discovered in Hadley's vehicle, however, had not been used.

Finally, Officer Koza testified at trial that while Hadley worked with law enforcement officers back in November 2004, Hadley was not working with him to "set up drug dealers" on February 19, 2005.

## II.  Analysis

Since the Court reserved its decision on Hadley's Rule 29 motion for judgment of acquittal with respect to Counts 1 and 3 at the close of the government's case-in-chief, the Court must decide this motion solely upon the evidence as it existed at that time.  *See* Fed. R. Crim. P. 29(c) (providing

that while a court may reserve its decision on a motion for a judgment of acquittal, "[i]f the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved"). A Rule 29 motion is a challenge to the sufficiency of the evidence. *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996). For purposes of deciding a Rule 29 motion, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The Court must resolve all reasonable inferences in favor of the government. *United States v. Layne*, 192 F.3d 556, 568 (6th Cir. 1999).

The government concedes that Hadley's admissions were "the centerpiece" of its proofs establishing that Hadley "conspired with at least one other person to distribute and possess with intent to distribute a quantity of cocaine (Count 1), and that the firearm found on his person was possessed in furtherance of" the drug trafficking crime alleged in Count 1. (Pls.' Opp'n Def.'s Rule 29 Mot. at 16.) The Supreme Court has recognized, however, that "[i]t is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Wong Sun v. United States*, 371 U.S. 471, 488-489, 83 S. Ct. 407, 418 (1963). The purpose of this rule, the Supreme Court has explained "is to prevent 'errors in convictions based upon untrue confessions alone.'" *Smith v. United States*, 348 U.S. 147, 153, 75 S. Ct. 194, 197 (1954) (quoting *Warszower v. United States*, 312 U.S. 342, 347, 61 S. Ct. 603, 606 (1941)). "In our country," the Supreme Court has noted, "the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the

5

strain of suspicion may tinge or warp the facts of the confession." *Opper v. United States*, 348 U.S. 84, 89-90, 75 S. Ct. 158, 162 (1954). Thus, to sustain a conviction where the government relies upon the confession or admission of a defendant, "the government must introduce independent evidence to establish the trustworthiness of . . . [the] defendant's statement." *United States v. Trombley*, 733 F.2d 35, 37 (6th Cir. 1984). "[T]he corroborative evidence does not," however, "have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial evidence that the offense has been committed . . . ." *Smith*, 348 U.S. at 156, 75 S. Ct. at 199. Similarly, the Sixth Circuit explained in *Trombley*, which is relied upon by both parties, that, since "[t]he purpose of corroboration is [simply] to ensure the reliability of the confession or admission of the accused, . . . [i]t is generally recognized that corroboration in federal court . . . [need] not entail independent proof of each element of the offense charged." *Trombley*, 733 F.2d at 37; *see also United States v. Jackson*, 103 F.3d 561, 565 (7th Cir. 1996) (following *Trombley* in concluding that, contrary to the defendant's interpretation of the law, establishing the trustworthiness of a defendant's statement "does not require *independent* proof of *each element* of the offense charged"). Rather, so long as "there is extrinsic evidence tending to corroborate the confession," then "the confession as a whole is admissible, and some elements of the offense may be proven entirely on the basis of a corroborated confession." *Id.* at 37-38; *Jackson*, 103 F.3d at 565 (noting that "[t]he Supreme Court has explained that 'one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense through the statements of the accused'") (quoting *Smith*, 348 U.S. at 156, 75 S. Ct. at 199). Ultimately, of course, for a conviction to stand, the corroborating evidence, "taken together with the admission," must be "sufficient to support a finding of guilt beyond a reasonable doubt." *Trombley*, 733 F.2d at 37-38.

Preliminarily, the Court notes, the fact that Hadley's admissions were exculpatory is immaterial to the requirement that the government offer sufficient evidence corroborating the admissions. Hadley's admissions were exculpatory because he claimed he was working undercover for Officer Koza. If this were true, he would not have had the requisite intent necessary to be found guilty of conspiring to distribute cocaine. In *Opper*, the Supreme Court concluded, "exculpatory statements . . . may not differ from other admissions of incriminating facts. Given when the accused is under suspicion, they become questionable just as testimony by witnesses to other extrajudicial statements of the accused. They call for corroboration to the same extent as other statements." 348 U.S. at 92, 75 S. Ct. at 164.

First, the Court concludes that the government offered sufficient evidence "tending to corroborate" Hadley's admissions such that the admissions "as a whole" were admissible. *Trombley*, 733 F.2d at 38. The Court finds that the following evidence tends to corroborate Hadley's admissions: Deputy Hopkins testified that Hadley, upon approaching his vehicle from behind, stopped, executed a three point turn, and proceeded away from Deputy Hopkins. A reasonable juror could conclude that this conduct evidenced a consciousness of guilt of the conduct to which he admitted to Deputy Hopkins. Furthermore, the presence of Viera in Hadley's vehicle and Viera's flight tends to corroborate Hadley's admissions that he was taking Viera to a residence where Viera intended to sell nine ounces of cocaine. The recovery of the Glock firearm corroborates Hadley's admission that, in exchange for his efforts in assisting Viera, he was able to purchase the recovered Glock firearm at a price below the firearm's market value. *See United States v. Jackson*, 103 F.3d 561, 568 (7th Cir. 1996) (finding that the defendant's statement that his co-conspirator left a handgun at the defendant's house for safekeeping "was independently corroborated by the recovery" of the handgun, and that the defendant's statement that the defendant and his co-conspirator traded a shot-

gun for crack cocaine "was independently corroborated by the recovery of the shotgun . . ."). Finally, the "strong indication" that the drug-detection dog showed in Hadley's vehicle supports the conclusion (and Hadley's admission) that drugs were recently in the vehicle.

The Court recognizes that the evidence this Court concludes sufficiently corroborates Hadley's admissions does not unequivocally point to a finding that Hadley and Viera were engaged in a conspiracy to distribute cocaine. Other explanations for the corroborating evidence undoubtedly exist. For instance, Hadley, upon encountering Deputy Hopkins' cruiser, may have attempted to avoid it because he was worried about being stopped since he was driving without a license or because he had a firearm on his person (or perhaps, though less likely, he was not attempting to avoid it, but simply needed to turn around). In addition, Viera may have fled for a reason other than the fact that he had cocaine on his person that he intended to sell (perhaps he, like Hadley, had a gun on his person or maybe he simply thought that nothing good could come from an encounter with the police). Finally, the drug-detection dog's "strong indication" to the presence of narcotics in Hadley's vehicle need not necessarily support the conclusion that drugs were recently in the vehicle that the conspirators intended to sell. For one, the drugs that the drug-detection dog gave a "strong indication" to may have simply been in the car some days prior and consumed; or, perhaps, the drug-detection dog's "strong indication" to the presence of narcotics was in error.

Ultimately, while other potential explanations for the corroborating evidence may readily exist, that does not support the conclusion that this evidence does not corroborate Hadley's admissions. As noted above, the Supreme Court explained that "[i]t is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed . . . ." *Smith*, 348 U.S. at 156, 75 S. Ct. at 199. Again, the rationale for not permitting a conviction to rest

8

solely upon the admission or confession of an accused in this country is that, as is relevant here, "the doubt persists that the zeal of the agencies of prosecution to protect the peace . . . or the aberration of weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession [or admission]." *Opper*, 348 U.S. at 89-89, 75 S. Ct. at 162.  Therefore, courts require corroborating evidence to "fortify the truth" of a defendant's admissions to ensure that they were not the product of coercion or distorted under the strain of suspicion. *Jackson*, 103 F.3d at 567.  In this case, the Court finds that the government's evidence corroborating Hadley's admissions was sufficient to allay concerns that the events recounted in the admissions were either the product of coercion or distorted under the strain of suspicion.

Next, the Court concludes that Hadley's admissions, taken together with the corroborating evidence, were sufficient for a reasonable juror to conclude that Hadley was guilty beyond a reasonable doubt of conspiring to distribute and possess with intent to distribute cocaine.  Hadley claimed that he was working undercover for Officer Koza to set up some drug dealers.  He asserted that Viera was fronted nine ounces of cocaine, that he was taking Viera to a residence to sell the cocaine for $5,600, and that, in exchange for his efforts, he was able to purchase a Glock pistol from Viera for $350.  Officer Koza testified that, while Hadley worked undercover for him in the past, he was not working undercover for him on February 19, 2006.  Moreover, a drug-detection dog gave a "strong indication" to the presence of narcotics in Hadley's vehicle.  From this evidence, and, principally, from Hadley's admissions, a reasonable juror could find beyond a reasonable doubt that Hadley conspired with Viera to distribute and possess with intent to distribute cocaine.

### III.  Conclusion

While it "is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of

the accused," it is equally settled that the corroboration of the admission or confession need not entail "independent proof of each element of the offense charged."   Rather, to ensure that the confession or admission is not simply the product of police coercion or an aberration "of the accused under the strain of suspicion," the government must introduce independent evidence to establish the trustworthiness of the defendant's statement.   The Court concludes that the government offered sufficient evidence tending to establish the trustworthiness of Hadley's admissions and that this evidence (Hadley's admissions plus the corroborating evidence) was sufficient for a reasonable juror to conclude that Hadley was guilty beyond a reasonable doubt of conspiring with Viera to distribute cocaine.   Therefore, the Court will deny Hadley's motion for a judgment of acquittal with respect to Count 1.   Moreover, the Court will deny Hadley's motion for a judgment of acquittal with respect to Count 3 – possession of a firearm in furtherance of a drug trafficking crime – since his relief on this Count depended upon the issuance of a judgment of an acquittal on the predicate drug trafficking offense charged in Count 1.

An order consistent with this opinion will be entered.

Dated:  August 10, 2006                                    /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE